UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALAN JOSEPH,<br><br>      Defendant | Case No. 4:21-cr-40010-MRG |

**GOVERNMENT'S TRIAL BRIEF**

The United States respectfully submits this trial brief to identify relevant issues regarding the trial in the above-captioned matter.

**I.      The Indictment and Case Status**

The indictment charges the defendant with four counts of money laundering (sting provision), in violation of 18 U.S.C. § 1956 and one count of operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960.

This case centers around the defendant trading cash for Bitcoin for individuals involved in criminal activity. Bitcoin is a virtual currency that exists entirely on the Internet. Transactions in Bitcoin are identified by anonymous hashtags and individuals trading in Bitcoin can do so freely in many cases without identifying themselves in a way to tie themselves to specific transactions. While Bitcoin is not inherently illegal, criminal investigators have found that because it can be used in this anonymous fashion, people engaged in criminal activity prefer it to avoid detection by law enforcement agents.

In this case, the defendant is alleged to have participated in five Bitcoin trades with two undercover agents working for Homeland Security Investigations ("HSI").

On each occasion, the undercover agent provided anywhere between $12,000 to $35,000 to the defendant. In exchange, the defendant transferred a certain value of Bitcoin to the undercover agent's Bitcoin wallet. A Bitcoin wallet can be understood like a traditional wallet that is used to store funds, but it obviously exists only in digital form. A person's digital wallet is identified by a unique alphanumeric code.

The defendant completed the cash-to-Bitcoin transactions believing that the undercover agent engaged in the purchase of counterfeit goods like handbags, cellphone chargers and jackets from a Chinese supplier. The undercover agent told the defendant that the cash was proceeds of the sale of the counterfeit goods. The undercover agent told the defendant that the supplier wanted to get paid in Bitcoin, which is why the supplier used the services of the defendant.

Under 18 U.S.C. §1956, specifically § 1956(a)(3), this form of money laundering is known colloquially as a "sting operation." It is illegal for someone to participate in a financial transaction involving funds that that are represented to be the proceeds of a specified unlawful activity ("SUA"), and which financial transaction is intended to conceal or promote such illicit conduct:

> (3) Whoever, with the intent—
>
> (A) to promote the carrying on of specified unlawful activity;
> (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
> (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

18 U.S.C. § 1956(a)(3).

In this case, the specified unlawful activity is trafficking in counterfeit goods, which is a felony under 18 U.S.C. § 2320.  Trafficking in counterfeit goods is a specified unlawful activity under 18 U.S.C. § 1961.

In addition, the defendant is also charged with operating an unlicensed money transmitting business.  Between May 2019 and February 2021, the defendant accepted cash from members of the public and provided Bitcoin in exchange to them.  These activities required the defendant to register his business with the Department of Treasury's Financial Crimes Enforcement Network ("FinCEN").  The defendant did not register his business with FinCEN, and therefore he operated an unlicensed money transmitting business.  The defendant also violated federal law, specifically, the Bank Secrecy Act, because he did not: maintain a proper anti-money laundering program, file currency transaction reports, nor obtain proper identifications from his customers, all of which is required to operate a money transmitting business.

### A. Trial Status

The government expects to call between 4-6 witnesses in its case-in-chief.  These witnesses include government agents, a civilian witness who engaged in Bitcoin trades with the defendant, and a representative from FinCEN.  The government may call additional witnesses depending on cross-examination and any witnesses called by the defense.  The government expects the trial to last approximately 2-3 days (assuming a schedule of 9:00 a.m. to 4:00 p.m.).

## II.     Legal Elements of the Charged Offenses

18 USC § 1956(a)(3) – Money Laundering "Sting Provision"

1. Defendant conducted a financial transaction

    a. Federal Courts have held that Bitcoin transaction satisfy this requirement under 1956.  *United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014); *United States v. Budovsky*, No. 13CR368 DLC, 2015 WL 5602853, at *13 (S.D.N.Y. Sept. 23, 2015).

2. Involving property which is represented by a law enforcement officer to be proceeds of specified unlawful activity or property used to conduct or facilitate specified unlawful activity.

3. The defendant knew the proceeds involved were the proceeds of some kind of criminal activity that amounts to a felony under state or federal law;

4. The defendant acted with the intent to promote the SUA *or* conceal or disguise the nature, location, source, ownership or control of property believed to be proceeds of the specified unlawful activity.

<u>18 USC § 1960 – Operating an Unlicensed Money Transmission Business</u>[1]

1. Knowingly conducted, controlled, managed, supervised, directed or owned all or part of a money transmitting business.

    a. Numerous District Courts have held that Bitcoin qualifies as funds or money for purposes of 1960. [*United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) ("Bitcoins can be either used directly to pay for certain things or can act as a medium of exchange and be converted into a currency which can pay for things. . . . Indeed, the only value for Bitcoin lies in its ability to pay for things . . . . Sellers using Silk Road are not alleged to have given their narcotics and malicious software away for free—they are alleged to have sold them. . . . One can money launder using Bitcoin."); *United States v. Budovsky*, 2015 WL 5602853, at *13-15 (S.D.N.Y. Sept. 23, 2015) ("Next, Budovsky appears to argue that virtual currencies cannot be included within the term 'funds.' This precise argument was rejected recently in a case applying § 1956 to the owner and operator of the website Silk Road, a marketplace for illegal drugs that used the virtual currency Bitcoin. . . . The *Ulbricht* court's reasoning is adopted here."); *United States v. Ologeanu*, 2020 WL 1676802, at *10-11 (E.D. Ky. Apr. 4, 2020) (collecting cases and concluding that "the federal district courts have unanimously and univocally concluded that Bitcoin constitutes 'money' and 'funds'") (internal quotations and alterations omitted)]; *United States v. Freeman*, 688 F. Supp. 3d 1, 9-10 (D.N.H. 2023) ("Under § 1960, however, the term money transmitting includes transferring <u>funds</u> . . . It is clear that bitcoins are funds within the plain meaning of that term. Bitcoins can be accepted as payment for goods and services or bought directly from an exchange with a bank account . . . In today's society, Bitcoin is often used to pay for things, and it may sometimes be used as a medium of exchange that is subsequently converted to currency to pay for things.") (internal quotations and alterations omitted); *United States v. Iossifov,* 45 F.4th 899, 913 (6th Cir. 2022) ("While the terms 'monetary instrument' and 'funds' are

---

[1] There is no model jury instruction for this charge in the First Circuit. These elements are based on the USABook page on 1960 and I also consulted the Model Jury Instructions for the District of South Carolina. A Westlaw search for jury instructions for this charge produced 27 results, none of which were from D. Mass.

not defined within the money laundering statute, courts that have addressed this question have unanimously determined that Bitcoin falls under those terms."); *United States v. Phillips,* No. 22-CR-6058CJS, 2022 WL 16990050, at *3 (W.D.N.Y. Nov. 17, 2022) ("Virtually every federal court to consider this issue has determined that the ordinary meaning of 'funds' in the federal money laundering statutes encompasses Bitcoin . . . Because Bitcoin can be used to purchase things directly or can act as a medium of exchange that can easily be converted to ordinary currency in order to purchase things, courts have repeatedly concluded that Bitcoin constitutes 'funds' as used in the money laundering statutes*."); United States v. Murgio*, 209 F. Supp. 3d 698, 707-8 (S.D.N.Y. 2016) ("[F]unds, for the purposes of § 1960, means pecuniary resources, which are generally accepted as a medium of exchange or a means of payment. Applying that definition here, it is clear that bitcoins are funds within the plain meaning of that term . . . Dictionaries, courts, and the statute's legislative history all point to the same conclusion: bitcoins are funds."); *United States v. Faiella*, 39 F. Supp. 3d 544, 546 (S.D.N.Y. 2014) ("Bitcoin clearly qualifies as 'money' or 'funds' . . . Bitcoin can be easily purchased in exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions.")].

2. Which affected interstate or foreign commerce in some manner or degree.

3. While failing to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330.

### III.  Relevant Law

#### A.  Counterfeit Goods Statute – Specified Unlawful Activity

Under 18 U.S.C. § 1956(c)(7)(D), "specified unlawful activity" includes trafficking in counterfeit goods in violation of Title 18, United States Code, Section 2320.  Under 18 U.S.C. §2320, it is a crime to traffic in goods and knowingly use a counterfeit mark on or in connection with such goods.

#### B.  Promotion or Concealment under 1956

Under 18 U.S.C. § 1956, the government is permitted to charge under both the promotion and concealment theories, but it only needs to prove one theory at trial to sustain a conviction on this charge.  *See United States v. Bolden*, 325 F.3d 471, 487 (4th Cir. 2003)*; see also United States v. LeDonne,* 21 F.3d 1418, 1427 (7th Cir.1994; *United States v. Street,* 66 F.3d 969, 974 (8th Cir.1995)(same).

### IV.   Case-in-Chief Evidence

The government expects to present the following evidence at trial, subject to revision based on ongoing witness preparation, trial planning, and defense witnesses, arguments, or cross-examination.

### A. Witnesses

a. <u>FinCEN Witness</u>:  The government expects to call a senior compliance officer from FinCEN, which is the Treasury Department bureau that enforces the money transmitting regulations that the indictment charges the defendant with having violated. This witness will explain FinCEN's rules and regulations, and its role in protecting the U.S. financial system. This witness will define money transmitting and regulatory requirements that accompany being a money transmitter, including the filing of CTRs for cash transactions more than $10,000. He also is expected to explain the obligation not to engage in financial transactions that have as their apparent goal the evasion or circumvention of the Bank Secrecy Act. The same witness, as FinCEN records custodian, will certify that based on FinCEN's records, the defendant was not a registered money transmitting business nor did he file Currency Transaction Reports with FinCEN at the time of the events underlying the indictment, particularly for the qualifying transactions with the undercover agent and the civilian witness. The government provided notice regarding the nature of this witness's testimony to defense counsel by letter dated October 1, 2024.

b. <u>Undercover Officers</u>:  The government expects to call two undercover officers who engaged in the undercover transactions with the defendant.

c. <u>Case Agent</u>:   The government expects to call a case agent to describe the investigation and introduce exhibits to the jury. Based on their training and experience, we also expect them to testify regarding cryptocurrency, Bitcoin, blockchains and related topics.

d. <u>United States Postal Inspection Service</u>: The government may call a witness from the United States Postal Inspection Service ("USPIS") regarding evidence obtained during the investigation related to packages reviewed and analyzed, and at times seized by the USPIS.

e. <u>Civilian Witnesses</u>:  The government anticipates calling a civilian witness who conducted Bitcoin trades with the defendant, as well as an undercover transaction at the direction of HSI agents.

f. <u>Other Potential Witnesses</u>: The government may call witnesses and offer evidence from banks and other institutions regarding evidence investigators obtained from

those businesses. The government has provided the defendant with business records certifications, indications of which records it intends to introduce in evidence, and is in the process of negotiating stipulations of that evidence.

### B. Exhibits

The government filed its first exhibit list on May 20, 2022. An updated list has been filed. That list provides a comprehensive, detailed list of the exhibits the government intends to introduce at trial.

Among the exhibits the government intends to introduce include recordings from the undercover operations (with captions, we will refer to these as "synced transcripts"), images of text messages setting up the undercover buys between the defendant and law enforcement agents, photographs, receipts of the Bitcoin transactions, two money counters and a heat-sealing device used to seal currency.

## V. Anticipated Evidentiary Issues

### A. Government's Motions in Limine

The government filed an omnibus motion in limine on the docket pursuant to the Court's pretrial order.

## VI. Other Matters

### A. Voir Dire and Jury Instructions

The government filed its proposed voir dire questions and proposed jury instructions on the docket pursuant to the Court's pretrial order.

### B. Reciprocal Discovery from Defendant

The government has not received reciprocal discovery from the defendants as of yet. The government understands from a telephone call with counsel for the defendant as of October 30,

2024, that the defendant does not anticipate any reciprocal discovery. The government reserves its rights as to such discovery in accordance with both the Local and Federal Rules.

**Special Arrangements**

a. *Paralegal*. The government respectfully requests that, in addition to trial counsel, the Court allow Megan McKenna, a paralegal from the United States Attorney's Office, to sit at counsel table. Ms. McKenna is an integral member of the prosecution team and will assist the undersigned counsel in their efforts to introduce the physical evidence and audio recordings in this case.

b. *Witnesses*. Some of the government's witnesses will be traveling from out-of-town by airplane or train. Depending on witness schedules and the actual date that trial commences, the government may request that certain witnesses be allowed to testify out of order.

c. *Case Agent*. The government requests that FBI Special Agent Derek Gerega be designated as the case agent and allowed to sit at counsel table during the trial. Special Agent Gerega has been noticed as a potential witness.

                                                Respectfully submitted,

                                                JOSHUA S. LEVY
                                                Acting United States Attorney

By:   */s/ John T. Mulcahy*
        John T. Mulcahy
        Lindsey Weinstein
        Assistant United States Attorneys

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By: */s/ John T. Mulcahy*
John T. Mulcahy
Assistant U.S. Attorney
Dated November 1, 2024