UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 21-cr-40010-MRG |
| ) | |
| ALAN JOSEPH ) | |

**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT WITNESS AS IRRELEVANT AND AS INADMISSIBLE EVIDENCE OF UNCHARGED CONDUCT**

Now comes the Defendant in the above-captioned matter and hereby moves to preclude the Government from presenting the testimony of one of its proposed witnesses, Ari Jigarjian. According to reports and other discovery produced by the Commonwealth, the only testimony this proposed witness could offer is irrelevant and thus inadmissible. Fed. R. Evid. 401, 402. Even if this Court finds that it is somehow relevant, the meager probative value will be substantially outweighed by a risk of unfair prejudice, confusing the issues, and presenting cumulative evidence. Fed. R. Evid. 403. Moreover, the witness's anticipated testimony will present inadmissible uncharged conduct and propensity evidence. Fed. R. Evid. 404(b).

**I. Foreseeable Scope of Proposed Witness's Testimony**

The witness list filed by the Government on November 1, 2024, indicates that the Government intends to present the testimony of Ari Jigarjian. *See* Doc. 164, #6. According to summaries of his prior statements to investigators, produced in Supplemental Discovery on November 8, 2024, the proposed witness engaged in the distribution of methamphetamine (in the form of Adderall) by purchasing the pills with bitcoin on various "darknet" marketplaces and selling those pills locally, for cash. In April 2019, the proposed witness informed investigators that he traded proceeds of those cash sales for cryptocurrency—specified to be "Ethereum"—

from a local "bitcoin vendor" he knew only as "Joe." He described Joe as "mostly legit" and gave no indication that he and "Joe" ever discussed the source of the cash he converted to bitcoin. The proposed witness provided investigators with information regarding how he contacted "Joe," where he would meet "Joe," and generally how the conversion process worked.

On November 6, 2024, the proposed witness met again with an investigator, along with the prosecutors in this matter. According to the report of that meeting, produced in Discovery on November 8, 2024, he provided further information about methods he used to convert cash to cryptocurrency; individuals, including "Joe," with whom he met to make those conversions; where and how many times he met with "Joe"; and how the process worked with "Joe." The November 2024 report makes clear that the proposed witness "stopped dealing narcotics when he was questioned by law enforcement officials in March/April 2019."

Mr. Joseph has not been indicted for any of the conduct described by the witness.

## II. The Proposed Witness's Testimony Is Irrelevant to the Charges Against Mr. Joseph, Presents Only Uncharged Conduct and Propensity Evidence, and Creates a Substantial Risk of Unfair Prejudice, Confusing the Issues, and Presenting Cumulative Evidence.

The burden of proving admissibility falls to the proponent of the evidence. *See United States v. Meserve*, 271 F.3d 314, 3270328 (1st Cir. 2001). Only relevant evidence is admissible, and to be relevant, evidence must have some tendency to make a material fact more or less probable than it would be without the evidence. Fed. R. Evid. 401 & 402.

"Evidence of any other crime, wrong, or act is not admissible to prove a [defendant's] character in order to show that on a particular occasion the [defendant] acted in accordance with the character." Fed. R. Evid. 404(b). "'While logically relevant, "propensity" or "bad character" evidence is deemed to carry an unacceptable risk that the jury will convict the defendant for crimes other than those charged,' . . . or simply because 'a bad person deserves punishment[.]'"

*United States v. Hicks*, 575 F.3d 130, 141-142 (1st Cir. 2009), quoting *United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982). Courts considering admission of "prior act" evidence must first "ask whether the proffered evidence has a 'special' relevance, i.e., a non-propensity relevance,", then determine whether the evidence should nonetheless be excluded under Rule 403. *Id.* at 142, quoting *United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008). Even relevant evidence should be excluded where "its probative value is substantially outweighed by a danger of. . . unfair prejudice, confusing the issues, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The First Circuit urges judges to "carefully consider the proponent's assertion of why a [prior act] has special relevance and examine whether, in the particular case-specific circumstances, the proponent is simply attempting to disguise propensity evidence by artificially affixing it with the label of a permitted Rule 404(b)(2) purpose." *United States v. Henry*, 848 F.3d 1, 9 (1st Cir. 2017). And in assessing the evidence under Rule 403, "a court must consider both whether the evidence has been offered to prove an issue that is in genuine dispute, and whether the evidentiary point can be made with other evidence that does not present a risk of unfair prejudice." *Id.*

### A. Money Laundering "Sting" Allegations (Counts 1-4)

The first four counts of the indictment allege that Mr. Joseph engaged in Money Laundering, in a "sting," in violation of 18 U.S.C. §1956(a)(3)(A) & (B). The counts allege, in part, that he engaged in four distinct financial transactions with an undercover officer, involving property "represented to be proceeds of specified unlawful activity and. . . used to conduct and facilitate specified unlawful activity, that is, trafficking in counterfeit goods and services[.]" The individual transactions are alleged to have occurred on August 14, 2020, October 29, 2020,

December 9, 2020, and February 4, 2021. As set out by the First Circuit in *United States v. Castellini*, the "essential elements of the money laundering sting statute," §1956(a)(3), are:

> Whoever, with the *intent*—
>
> (A) to *promote* the carrying on of *specified unlawful activity*; [or]
>
> (B) to *conceal* or disguise the nature, location, source, ownership, or control of property *believed to be the proceeds of specified unlawful activity*;
>
> ...
> *conducts* or attempts to conduct a *financial transaction* involving property *represented to be the proceeds of specified unlawful activity* ...

392 F.3d 35, 46 (1st Cir. 2004) (emphasis added by First Circuit).

The substance of the proposed witness's testimony has no tendency to make any fact of consequence to the charges against Mr. Joseph more or less probable, rendering it irrelevant and inadmissible. Fed. R. Evid. 401, 402. Each money laundering charge relates to a specific transaction, all four of which involved an undercover officer and property allegedly "represented to be the proceeds" of sales of counterfeit merchandise, and all four transactions are alleged to have occurred within the six-month span from August 2020 to February 2021. The witness has no knowledge of any of the four alleged transactions with the undercover agent, all of which allegedly occurred more than a year after the witness stated he ceased his own illegal activity. As described to investigators, each conversion of cash to cryptocurrency "Joe" performed for him would have involved proceeds of his actual unlawful activity, distribution of narcotics, not a "sting" with proceeds "represented to be" from counterfeit goods.

Even if the proposed witness's testimony were somehow relevant to the money laundering charges, it would only introduce evidence of *other* instances in which Mr. Joseph allegedly converted cash to cryptocurrency, constituting "other acts" and uncharged conduct by Mr. Joseph. Fed. R. Evid. 404(b). Particularly where the witness's testimony about prior alleged cryptocurrency transactions would involve allegations that the money involved were the

proceeds of his own distribution of methamphetamine, if believed, the testimony risks the jury convicting on some perception that Mr. Joseph is a bad person deserving punishment, rather than on evidence of the four indicted transactions. Finally, any probative value such evidence might have, if determined to be relevant to some non-propensity purpose, would be substantially outweighed by the risk of unfair prejudice, for the same reason; confusing the issues and scope of the charges in the indictment; and presenting cumulative evidence, on top of the undercover officer's testimony and recorded interactions.

### B. Operating an Unlicensed Transmitting Business (Count 5)

The final count alleges that Mr. Joseph operated an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960, "from in or about May 2019 through February 2021[.]" To prove this count, the Government must prove that Mr. Joseph "knowingly conduct[ed], control[led], manage[d], supervise[d], direct[ed], or own[ed] all or part of an unlicensed money transmitting business." 18 U.S.C. § 1960(a). The Government must prove "that the defendant knew that the business was engaged in money-transmitting and also knew that the business had no money-transfer license." *United States v. Elfgeeh*, 515 F.3d 100, 132-133 (2d Cir. 2008). The Government has alleged that the "money transmitting business" was "unlicensed" due to failure to register as required by 18 U.S.C. § 5330 and failure to file a "currency transaction report" as required by the FinCEN regulations. 18 U.S.C. § 1960(b)(1)(B).

Although Count 5 charges operation of this alleged "money transmitting business" within a broad, inclusive timeframe—May 2019 to February 2021, rather than individual transactions on specified dates—the reports indicate the proposed witness stopped selling the counterfeit Adderall for cash upon being interviewed by investigators in April 2019, prior to even the earliest date alleged in the indictment. There is no overlap, and reports of investigators' multiple

interviews with the proposed witness reflect no personal knowledge of Mr. Joseph's alleged activities any later than March or April 2019. As the proposed witness's testimony would be limited to his personal knowledge, for the same reasons addressed above, his testimony would introduce evidence of "other acts" and uncharged conduct by Mr. Joseph, inadmissible under Fed. R. Evid. 404(b), and even if relevant for some non-propensity purpose, any minimal probative value would be substantially outweighed by the risk of unfair prejudice, confusing the issues, and presenting cumulative evidence.

### C. Prejudicial Variance in Violation of the Presentment Clause

Finally, applicable to all five counts, admitting evidence of other alleged transactions creates an unacceptable risk of a prejudicial variance from the indictment, in violation of the Presentment Clause. Once a grand jury returns an indictment, the "charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U. S. 212, 215–216 (1960). "Any other doctrine would place the rights of the citizen, which were intended to be protected by [the Presentment Clause], at the mercy or control of the court or prosecuting attorney." Id. at 216–217. A prejudicial variance from an indictment occurs when: (1) the evidence presented at trial proves facts materially different from those in the indictment; and (2) the variance affected the defendant's substantive rights. *United States v. Maryea*, 704 F.3d 55, 73 (1st Cir. 2013). A defendant's substantive rights are affected when he shows prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to his ability to rely on the indictment to bar subsequent prosecutions under the Double Jeopardy Clause. *United States v. Pomales-Lebron*, 513 F.3d 262, 269 (1st Cir. 2008).

Introduction of the proposed witness's testimony would result in a variance because it would force Mr. Joseph to face allegations of "up to a dozen" other cryptocurrency transactions

involving conversation of "approximately $175k in drug proceeds," in addition to the conduct for which he was indicted. Had the Government wanted to indict Mr. Joseph on those charges, based on the proposed witness's description, they could have brought those charges to the grand jury and put him on notice that he would have to answer to those allegations. Absent proper indictment, the Government should be required to honor the grand jury's decision in issuing the five-count indictment.

For the reasons above, all testimony by the Government's proposed witness, Ari Jigarjian, should be excluded from trial in this matter.

Respectfully submitted,
ALAN JOSEPH
By His Attorneys,

*/s/ Darren T. Griffis*
Darren T. Griffis, BBO #675627
Angela J. Cavanaugh, BBO #696058
Rudolf, Smith, Griffis & Ruggieri, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
Tel: (508) 426-6330
griffis@rudolfsmith.com
cavanaugh@rudolfsmith.com

Date: November 15, 2024

## CERTIFICATE OF SERVICE

I hereby declare that I have today filed this document in the above case using ECF system which shall send notification of such filing to the United States Attorney and all other parties.

*/s/ Darren T. Griffis*
Darren T. Griffis, Esq.

Date: November 15, 2024