UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Docket No. 4:21-cr-40010-MRG |
| ) | |
| ALAN JOSEPH ) | |

# DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Pursuant to Federal Rule of Criminal Procedure 29(a), the Defendant moves this Honorable Court for a judgment of acquittal on all indictments because the Government has failed to prove these charges beyond a reasonable doubt, and the evidence, even when taken in the light most favorable to the government, is thus insufficient to sustain a conviction on any of the charges.

A. There is Not Sufficient Proof that the Defendant Knew that it Was Unlawful to Sell Fake Handbags or Other Goods.

Mr. Joseph was indicted under 18 U.S.C. §1956(a)(3)(A) & (a)(3)(B), which are often referred to as the "sting" provisions of the money laundering statute, while 18 U.S.C. §1956(a) covers violations involving *actual* proceeds. As set out by the First Circuit in *United States v. Castellini*, the "essential elements of the money laundering sting statute," §1956(a)(3), are:

Whoever, with the *intent*—

(A) to *promote* the carrying on of *specified unlawful activity*; [or]

(B) to *conceal* or disguise the nature, location, source, ownership, or control of property *believed to be the proceeds of specified unlawful activity*;

...

conducts or attempts to conduct a *financial transaction* involving property *represented to be the proceeds of specified unlawful activity* ...

392 F.3d 35, 46 (1st Cir. 2004) (emphasis added by First Circuit).  Thus, knowledge (or, where "represented" rather than actual, the *belief*) that proceeds involved in the financial transaction are the product of *unlawful* activity is an essential element of money laundering. As such, particularly where the officers involved in this sting operation opted for counterfeit ("fake") goods, rather than something more immediately obvious like narcotics or arms trafficking, Mr. Joseph's understanding that the activity described by the undercover agent *is unlawful* is a critical aspect of the requisite intent for the offense.

The definition of knowing in Subsection (c) of 18 U.S.C. § 1956 further underscores the importance of the Defendant's knowledge that the proceeds were from unlawful activity:

> (c) As used in this section— (1) the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" [*in subsection (a)(1)*\*] means that the person knew the property involved in the transaction represented **proceeds from some form,** *though not necessarily which form,* **of activity that constitutes a <u>felony</u>** under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7)[.]

18 U.S.C. § 1956(c).  Though § 1956(c) specifically references language only appearing in § 1956(a)(1), not §1956(a)(3), the First Circuit has indicated it would apply that same reasoning to (a)(3) offenses. *See United States v. George*, 761 F.3d 42, 48 n.7 (1st Cir. 2014). As the Court in *George* noted, §1956(a)(1) is "virtually identical to §1956(a)(3)(B)." **George**, 761 F.3d at 53. In fact, §1956(a)(1)(A)(i) criminalizes the same conduct as § 1956(a)(3)(A), and § 1956(a)(1)(B)(i) criminalizes the same conduct as § 1956(a)(3)(B). The differences are in: "Knowing" that the source of proceeds which are "in fact" from unlawful activity, versus "believing" that the source of proceeds "represented to be" from unlawful activity, **and** (a)(1)(B) "knowing… designed… to conceal" versus (a)(3)(B) "intent to conceal."

The difference between "knowledge" and "belief" was addressed by the Second Circuit in *United States v. Nektalov*, 461 F.3d 309 (2d Cir. 2006). "[B]elief is . . . properly understood to

be a part of knowledge." *Id.* at 314-15.  "[W]hen a defendant claims. . . that he did not believe that the property involved in the transaction was the proceeds of an unlawful activity," and as such did not violate §1956(a)(3), "he has asserted the lack of the specific aspect of knowledge required for conviction of that statute." *Id.* at 315.  Although knowledge is, fundamentally, belief substantiated by veracity, belief is tantamount to knowledge in the context of a sting operation. This is true because punishing the target of a sting assumes the veracity of a defendant's beliefs insofar as it embraces the legal fiction that the defendant has engaged in a "criminal" enterprise. Thus, a defendant who "believes" the representations made by informants in a sting can be said to "know" of the underlying criminal enterprise even though the enterprise does not, in reality, exist. Such a defendant "knows" of the crime in the sense that he is aware that the informants' acts are suggestive of illegal behavior.  *Id.* at 316.

      The Second Circuit concluded that §1956(c) was "plainly crafted to distinguish between the actual source of laundered money and the defendant's knowledge as to the source of the money." *United States v. Maher*, 108 F.3d 1513, 1526 (2d Cir. 1997). Thus, what mattered—for the "in fact" proceeds subsection—was the defendant's knowledge that the money involved in the transaction was the *product of unlawful activity*. *Id.* To hold otherwise would "subvert[] the plain goal of the statute." *Id.* at 1525.  The Second Circuit also cited to the parallel between that offense and the "sting" version, in subsection (a)(3), in support of its conclusion. In *Stavroulakis*, the Court explained, it had already "ruled that, in order to commit a money laundering offense prohibited by § 1956(a)(3), a defendant need not know precisely what specified unlawful activity produced the money, so long as he believed that the money was from some unlawful activity[.]" *Stavroulakis*, 952 F.2d at 691; *see also*, *United States v. Kaufmann*, 985 F.2d 884, 896 (7th Cir. 1993) (approving jury instructions where "[t]he court clearly instructed the jury that it must find

3

that Kaufmann believed the cash to be proceeds of an unlawful activity in order to convict under count five.").

In this case, the Government has failed to produce sufficient evidence that the Defendant knew that it was unlawful to sell fake handbags or other goods. Given this failure to establish that the Defendant knew or believed that proceeds involved in the financial transaction are the product of *unlawful* activity, the Court should enter a judgment of acquittal as to Counts 1-4.

B. There is Not Evidence that the Defendant was Operating an "Unlicensed Money Transmitting Business," as that Term Has Been Defined Under the Applicable Statute and Regulations.

Mr. Joseph is indicted under 18 U.S.C. §1960, which states that: "Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business is in violation of the statute. According to the statute:

> (b) (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
>
> > (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
> >
> > (B) fails to comply with the money transmitting business registration requirements under [18 U.S.C. §5330], or regulations prescribed under such section [including FinCEN reporting requirements]; or
> >
> > (C) otherwise involves the transportation or transmission of funds that are
> >
> > known to the defendant to have been ***derived from*** a criminal offense ***or***
> >
> > are intended to be used ***to promote or support*** unlawful activity;
>
> (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; [. . .]

18 U.S.C. § 1960.

In interpreting the definition of "unlicensed money transmitting business" under §1960(b)(1)(B), "courts have held that 'there is virtually no substantive difference, nor did Congress intend there to be a substantive difference, between the terms "money transmitting" in Section 1960[(b)(2)] and "money transmitting business" in Section 5330[(d)(1)].'" *United States v. Harmon*, 474 F.Supp.3d 76, 101 (D.D.C. 2020).

According to 18 U.S.C. §5330(d)(1), "The term "money transmitting business" means any business other than the United States Postal Service that:

> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system[.]

"Regulations promulgated under § 5330 require 'money services businesses' (MSBs) to register with FinCEN. 31 C.F.R. § 1022.380(a)(1). Those regulations identify a category of MSBs called '[m]oney transmitter[s],'" which are defined in 31 C.F.R. § 1010.100(ff)(5)(i)(A). *See Harmon*, 474 F.Supp.3d at 102. 31 C.F.R. §1010.100(ff) defines a money transmitter as:

> "A person that provides money transmission services. The term "money transmission services" means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means. "Any means" includes, but is not limited to, through a financial agency or institution; a Federal Reserve Bank or other facility of one or more Federal Reserve Banks, the Board of Governors of the Federal Reserve System, or both; an electronic funds transfer network; or an informal value transfer system; or
>
> (B) Any other person engaged in the transfer of funds.

"[B]oth the statutory and regulatory language of § 5330 seemingly require a money transmitting business to move funds from one person or place to another." *Harmon*, 474 F.Supp.3d at 103.

The Second Circuit addressed the knowledge element for violations of §1960, following a 2001 amendment to the statute, in *United States v. Elfgeeh*, 515 F.3d 100 (2d Cir. 2008). Although the amendment removed the requirement, under §1960(b)(1), that an "illegal money transmitting business" be "intentionally operated without an appropriate money transmitting license," and changed the §1960(a) knowledge requirement from "knowing the business is an illegal money transmitting business" to a more general "knowingly conducts…" structure, the Court held that the language of the amended section—"knowingly conducts ... an unlicensed money transmitting business"—appears still to require proof that the defendant knew that the business was engaged in money-transmitting and also knew that the business had no money-transfer license. *Elfgeeh*, 515 F.3d at 132-33 (emphasis added). Though it was in part correct—that is, though it set out *part* of the knowledge element—the Court held that the trial court erred in the following "unduly limited" and therefore ambiguous line of the jury instructions: "[T]he government need *only* prove that the defendant knew that he was engaged in transmission of money on behalf of others[.]" *Elfgeeh*, 515 F.3d at 134 (emphasis added). Thus, the government, though, **must prove**—as *part* of the knowledge requirement—that the defendant "knew that he was engaged in transmission of money on behalf of others." And the "transmission of money on behalf of others" must be specifically defined, consistent with the statutory and regulatory authority.

FinCEN's guidance interpreting 31 C.F.R. § 1010.100 on what qualifies as a "money transmitter" makes it clear that a broker or dealer in currencies who accepts and transmits funds solely for the purpose of effecting a "bona fide" purchase or sale of currencies for or with a customer qualifies for the exemption described at 31 C.F.R. § 1010.100(ff)(5)(ii)(A)(F) for persons who accept and transmit funds in connection with the purchase of sale of goods, which

6

in this case involved the purchase of currency.  In Guidance issued in 2008, entitled "Application of the Definition of Money Transmitter to Brokers and Dealers in Currency and Other Commodities," FinCEN clarified the circumstances when "a broker or dealer in currency or other commodities is a money transmitter when, in the ordinary course of business, the broker or dealer accepts and transmits funds in order to effect transactions in currency or other commodities for or with a customer." *Id.* at 1.  This Guidance instructs that:

> When a broker or dealer in currency or other commodities accepts and transmits funds solely for the purpose of effecting a bona fide purchase or sale of currency or other commodities for or with a customer, such person is not engaged as a business in the transfer of funds and is not acting as a money transmitter as that term is defined in our regulations.  In such circumstances, the transmission of funds is a fundamental element of the actual transaction necessary to execute the contract for the purchase or sale of the currency or the other commodity. The transmission of funds is not a separate and discrete service provided in addition to the underlying transaction. It is a necessary and integral part of the transaction.

*Id.* at 2.

While the Treasury Department updated the regulations related to money service businesses and money transmitters in 2011 to account for the introduction of virtual currencies like Bitcoin, the core definition of when a person or entity acts as a money transmitter remained the same, as evidenced by the fact that FinCEN cited to the 2008 Guidance when it issued new Guidance in 2013 to explain the 2011 regulations.  In that 2013 Guidance, entitled "Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies," FinCEN again clarified that the definition of a money transmitter cannot be construed as encompassing persons who accept and transmit funds solely for the purpose of executing contracts for the bona fide purchase and sale of currencies, either real or virtual.  Specifically, the bureau reviewed different activities involving virtual currency and has made determinations regarding the appropriate regulatory treatment of administrators and exchangers of virtual currency.  *Id.* at 3.

Importantly, in analyzing the activities of brokers and dealers of e-currencies and e-precious metals, FinCEN stated that:

> [A]s long as a broker or dealer in real currency or other commodities accepts and transmits funds solely for the purpose of effecting a *bona fide* purchase or sale of the real currency or other commodities for or with a customer, such person is not acting as a money transmitter under the regulations.
>
> However, if the broker or dealer transfers funds between a customer and a third party that is not part of the currency or commodity transaction, such transmission of funds is no longer a fundamental element of the actual transaction necessary to execute the contract for the purchase or sale of the currency or the other commodity. This scenario is, therefore, money transmission.

*Id.* at 3-4.

In this case, the evidence indicated that the Defendant only knowingly executed bona fide purchases and sales of Bitcoin directly with other individuals. Given the regulations promulgated to enforce the Bank Secrecy Act and the authoritative interpretation of those regulations issued by FinCEN, this activity did not qualify the Defendant as a "money transmitter," and he was thus not required to register as a "money transmitting business" or "money service business." Accordingly, this Court should allow the judgement of acquittal as to Count 5.

## **CONCLUSION**

For all of the reasons outlined above, the Defendant respectfully requests that this Court enter a judgement of acquittal as to all Counts of these indictments.

Respectfully submitted,<br>
ALAN JOSEPH,<br>
By His Attorneys,<br><br>

/s/ *Darren T. Griffis*<br>
Darren T. Griffis, BBO #675627<br>
Angela J. Cavanaugh, BBO #696058<br>
Rudolf, Smith, Griffis & Ruggieri, LLP<br>
446 Main Street, Suite 1503<br>
Worcester, MA 01608<br>
Tel: (508) 426-6330<br>
griffis@rudolfsmith.com<br>
cavanaugh@rudolfsmith.com

Date: November 22, 2024

## CERTIFICATE OF SERVICE

I, Darren T. Griffis, Attorney for the Defendant, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Darren T. Griffis*<br>
Darren T. Griffis, Esq.